## CENTRACCHIO v. GARRITY.
No. 4633.

United States Court of Appeals,
First Circuit.

July 25, 1952.

Writ of Certiorari Denied Oct. 27, 1952.

See 73 S.Ct. 108.

Joseph J. Gottlieb, Boston, Mass. (Lawrence E. Cooke, Boston, Mass., on the brief), for appellant.

Meyer Rothwacks, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., Ben Kohler, Jr., Sp. Asst. to Atty. Gen., and George F. Garrity, U. S. Atty., and Edward D. Hassan, Asst. U. S. Atty., Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

We have here an appeal from an order denying on the merits a Petition and Motion to Suppress Evidence filed in the court below prior to indictment.

The petition alleged that the United States attorney for the District of Massachusetts "has given notice of intention to present evidence to the Grand Jury to obtain an indictment of your petitioner for violation of the Internal Revenue Code in filing of income tax returns by your petitioner for the years 1945 to 1949 inclusive. The evidence which the United States Attorney intends to present to the Grand Jury was given by your petitioner to Agents of the Bureau of Internal Revenue upon the promise of the United States Secretary of the Treasury that your petitioner would not be prosecuted, which promise was contained in the Secretary of the Treasury's public statement of its policy to grant immunity to taxpayers making voluntary dis-

closures * * *." This statement, issued by Secretary of the Treasury Vinson on August 21, 1945, was as follows:

"The Commissioner of Internal Revenue does not recommend criminal prosecution in the case of any taxpayer who makes a voluntary disclosure of omission or other misstatement in his tax return. Monetary penalties may be imposed for delinquency, for negligence and for fraud, but the man who makes a disclosure before an investigation is under way protects himself and his family from the stigma of a felony conviction. And there is nothing complicated about going to a collector or other revenue officer and simply saying, 'There is something wrong with my return and I want to straighten it out'."

It was further alleged in the petition that independent of the "promise" of the Secretary of the Treasury aforesaid, "the Agents of the Bureau of Internal Revenue by express and implied promises of immunity made by them to the petitioner obtained from him the evidence sought to be suppressed"; that at a conference on May 22, 1950, agents of the Treasury Department agreed to accept petitioner's case as one of voluntary disclosure, and petitioner was induced by such agents to believe "that no prosecution would result from his disclosures relating to his income tax liability"; that on said date petitioner did not know and had no reason to believe that his income tax returns for 1945 to 1949 were under investigation or examination; that petitioner, fully cooperating with the said agents, submitted to them all necessary information, records and files in his possession and made a sworn statement at their request, thus enabling the agents fully to determine petitioner's income tax deficiency; that petitioner on April 12, 1951, "learned for the first time that his case was not being accepted by the Treasury Department as a civil matter and that on the following day he learned that his case had been recommended for criminal prosecution on the grounds that income had been fraudulently omitted from his income tax returns" for the taxable years in question.

The petition further alleged that the agents of the Bureau of Internal Revenue, in obtaining the evidence from him, did not advise petitioner of his constitutional rights against self-incrimination; and averred, as a conclusion of law, that the evidence given by the petitioner to said agents was obtained from petitioner "in violation of his rights guaranteed under the Fifth Amendment to the Constitution of the United States, and may not be used against him in any criminal prosecution."

The petition prayed for an order (1) restraining the United States attorney from using before the grand jury or in any criminal prosecution the evidence so obtained from petitioner, including his sworn statement aforesaid, and (2) directing the suppression of said evidence in any criminal prosecution of the petitioner.

The petition came on to be heard before Judge Wyzanski. Petitioner, and one Francis H. Sloan, an accountant who had participated in the negotiations with the Treasury agents on behalf of petitioner, testified in support of the petition. The United States attorney stated that he had several witnesses to call, but the district judge, after hearing petitioner's case, indicated that it was not necessary to hear testimony on the part of respondent, and no such testimony was offered.

The testimony on behalf of petitioner was to the effect that upon learning of the Treasury's voluntary disclosure policy, and upon being assured by the Treasury agents that his case would be accepted on that basis, petitioner told revenue agents that his returns were not in order, and supplied them with all of the necessary data to enable them to compute his deficiencies. He gave the revenue agents access to his safe deposit box and turned over to them his cancelled checks, his bank statements, and his check books; also the records of a bank account in his wife's name and of a joint account in the name of petitioner and his wife. In addition, he made available to the Treasury agents his case files as an attorney at law, turned over to them the diaries which he used for filing interrogatories and listing his appointments, and gave them information on his dividends, a

rent analysis for his office, a statement of the interest he had received on his deposits, and copies of his earlier tax returns. Finally, he furnished them a sworn statement with respect to the expenses or disbursements incurred in connection with the cases listed in his case files. Neither the testimony of petitioner nor that of Sloan suggested that the representations made to petitioner by the Treasury agents were in the nature of a ruse or scheme designed to induce him to incriminate himself so that he might be prosecuted. The thrust of the testimony was that in ultimately recommending criminal prosecution the Treasury agents failed to comply with the announced voluntary disclosure policy, not that they never intended so to comply.

On February 20, 1952, the district court entered its order now appealed from denying the Petition and Motion to Suppress Evidence. In a memorandum the district judge found that petitioner, being aware of the announced voluntary disclosure policy of the Treasury Department, turned over the evidence in question, and made the sworn statement aforesaid, to agents of the Treasury Department. The district judge also found that there was no evidence that at the time these disclosures were made the Treasury officials did in fact contemplate any criminal prosecution of petitioner, and that therefore there was no basis for a finding that the Treasury agents intended all along to break some promise or declaration of policy, and obtained from petitioner the evidence in question by fraudulent misrepresentation of their intention in that regard. This finding that there was no evidence of any such fraud on the part of agents of the Treasury was fully warranted by the testimony. Further, the district judge found that there was no evidence that the intention of the Treasury agents at the time of receiving the evidence from petitioner was the slightest bit different from that declared in the statement of August 21, 1945, by the Secretary of the Treasury; that such published statement was no more than a declaration of policy as to what would be recommended by the Department and was in no sense a promise that there would be no criminal prosecution.

We are informed that on February 21, 1952, one day after the entry of the order now on appeal, a grand jury in the District of Massachusetts handed down an indictment against Centracchio, charging that he filed false and fraudulent income tax returns, understating his income and the tax due thereon in the years 1945, 1946, 1947 and 1948, in violation of 26 U.S.C. § 145 (b). Whether the handing down of this indictment has any effect upon the present appeal we reserve for later consideration.

■ There is no doubt that the order under review was a "final decision", appealable to this court under 28 U.S.C. § 1291. It was not an interlocutory order in the course of a criminal proceeding. No such proceeding was pending before the district court. The filing of the Petition and Motion to Suppress Evidence was the initiation of an independent proceeding of a summary character against the United States attorney as an officer of the court. The order of the district court denying the petition finally disposed of this proceeding, and was therefore an appealable "final decision". Perlman v. United States, 1918, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Burdeau v. McDowell, 1921, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; Turner v. Camp, 5 Cir., 1941, 123 F.2d 840; In re Fried, 2 Cir., 1947, 161 F.2d 453. See Cogen v. United States, 1929, 278 U.S. 221, 225, 49 S.Ct. 118, 73 L.Ed. 275.

■ The basis of the district court's jurisdiction to entertain the petition in such independent proceeding warrants passing comment. It is not suggested that the district court had jurisdiction under any of the jurisdictional grants in 28 U.S.C. §§ 1331–1358. But it has long been accepted that where evidence, obtained by an unconstitutional search and seizure in violation of the Fourth Amendment, is in the hands of a United States attorney, a federal district court may entertain and grant relief on a petition, filed even prior to any indictment, seeking a return of the papers or property unconstitutionally seized and the

suppression of the same as evidence. Burdeau v. McDowell, 1921, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. See Perlman v. United States, 1918, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Turner v. Camp, 5 Cir., 1941, 123 F.2d 840; In re No. 32 East Sixty-Seventh Street, 2 Cir., 1938, 96 F.2d 153, 156; Foley v. United States, 5 Cir., 1933, 64 F.2d 1; Goodman v. Lane, 8 Cir., 1931, 48 F.2d 32; United States v. Poller, 2 Cir., 1930, 43 F.2d 911, 74 A.L.R. 1382. The rationale of such cases is that the petition for relief is addressed to the inherent power of the court to discipline an officer of the court. Cf. In re Behrens, 2 Cir., 1930, 39 F.2d 561. Thus in Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344 at page 355, 51 S.Ct. 153, at page 157, 75 L.Ed. 374, the Court explained:

> "The United States attorney and the special agent in charge, as officers authorized to conduct such prosecution and having control and custody of the papers for that purpose, are, in respect of the acts relating to such prosecution, alike subject to the proper exertion of the disciplinary powers of the court. And on the facts here shown it is plain that the district court had jurisdiction summarily to determine whether the evidence should be suppressed and the papers returned to the petitioners."

Judge Hough made a similar explanation in a much-quoted passage in United States v. Maresca, D.C.S.D.N.Y.1920, 266 F. 713, 717:

> "Whenever an officer of the court has in his possession or under his control books or papers, or (by parity of reasoning) any other articles in which the court has official interest, and of which any person (whether party to a pending litigation or not) has been unlawfully deprived, that person may petition the court for restitution. This I take to be an elementary principle, depending upon the inherent disciplinary power of any court of record.
>
> "Attorneys are officers of the court, and the United States attorney does

not by taking office escape from this species of professional discipline. Thus power to entertain this motion depends on the fact that the party proceeded against is an attorney, not that he is an official known as the United States attorney. It is further true that the right to move does not at all depend on the existence of this indictment; it might be made, were no prosecution pending."

█ Although in the sense above indicated it cannot be said that the district court lacked "jurisdiction" of the petition in the instant case, the propriety of exercising such jurisdiction depends upon considerations of an equitable nature. See Eastus v. Bradshaw, 5 Cir., 1938, 94 F.2d 788; Goodman v. Lane, 8 Cir., 1931, 48 F.2d 32, 35. The search and seizure cases have gone pretty far with this idea of "disciplining" the United States attorney as an officer of the court at the pre-indictment stage. The lawfulness of a particular search and seizure may involve sharply contested issues of fact or of law; and a conscientious district attorney, entirely consistent with his oath of office, may deem it his duty to present such evidence to a grand jury.

█ We must, of course, respect the clear line of authority in the search and seizure cases. These authorities are indeed recognized in Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C., which is stated in the Advisory Committee's notes to be merely a restatement of existing law and practice. Rule 41(e) provides:

> "Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which

the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

This rule does not specify the time when such a motion may be made, and presumably it is broad enough to sanction the filing of such a motion in the district court prior to indictment.

 But in the unlawful search and seizure cases there has already, by hypothesis, been a seizure of property or effects from the possession of the petitioner in violation of his constitutional right. On the face of the petition in the present case, and certainly on the evidence offered by petitioner at the hearing before the district court, it is clear that the evidence in question did not come into the possession of the government officials in violation of petitioner's rights under the Fourth Amendment. He voluntarily turned over the evidence, and made the disclosures, to the agents of the Internal Revenue Bureau, for the purpose of a determination of his income tax liabilities. It is significant that the petition does not ask for the return of the evidence now in the hands of the United States attorney.

Judicial interference of this sort with the action of a United States attorney in the administration of the criminal law, at a pre-indictment stage, must, we think, be regarded as the exception rather than the rule. Cf. United States v. Thompson, 1920, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333. Aside from one case, about to be noted, we are unaware of any authorities sanctioning such interference except in the case of unlawful search and seizure.

In the case of In re Fried, 1947, 161 F.2d 453, a majority of the Second Circuit (Judge A. N. Hand, dissenting), by analogy to the unconstitutional search and seizure cases, held that a district court might entertain a pre-indictment petition for the suppression of a coerced confession alleged to have been extracted from petitioner in violation of his constitutional right under the Fifth Amendment. We are not required in the present case to express any opinion as to the correctness of this decision, and we merely note that it is not sanctioned by the terms of Rule 41(e). The Fried case, even if correctly decided, is no authority for appellant in the present case, for here it is clear that there has been no coerced confession by petitioner in violation of his constitutional right. The information supplied by petitioner was voluntarily given to aid in the computation of his income tax liability. In his brief, appellant disclaims any contention that the United States Government is bound on any contractual theory not to prosecute him. Nor does he claim that there is any statutory basis upon which a plea in bar or motion to dismiss the indictment could be premised. "The appellant's contention is simply that the use of the evidence which the government intended to present to the grand jury and which it now intends to use on the trial of the case, would constitute a violation of the appellant's rights under the Fifth Amendment, for the reasons set forth above. The objection is being made to the evidence and not to the indictment."

The pre-indictment petition in the present case was filed for the reason that it would obviously be to the advantage of petitioner if he could prevent an indictment against him on the basis of the evidence sought to be suppressed, and thus escape the burden of standing trial. As Judge Rifkind observed in the district court, in the Fried case, (Application of Fried) 68 F.Supp. 961, at page 963: "It should nevertheless be noted that the same arguments which support the petitioners' position here

would also support the contention that allegedly perjured statements in the possession of the United States Attorney may be suppressed before indictment. Indictment or trial on perjured evidence is an invasion of the right to due process. Such logic would lead to the absurd result that in a criminal case we would first try the 'evidence' before we indicted or tried the accused." And, of course, more generally, it would be to the advantage of a prospective accused if he could prevent an indictment by the suppression of evidence which he claimed, on some rule of law, would be inadmissible against him at an ensuing trial. But even the majority opinion in the Fried case recognized that it was "not feasible to enjoin the presentation to grand juries of all untrue, irrelevant or incompetent evidence." 161 F.2d at page 465. Judge Learned Hand said in the same case: "It would be an intolerable burden upon the prosecution of crime, if it were possible to test in advance the competency of evidence which an accused, to say nothing of a prospective accused, might be able to show was likely to be used against him. The protection of the individual from oppression and abuse by the police and other enforcing officers is indeed a major interest in a free society; but so is the effective prosecution of crime, an interest which at times seems to be forgotten." 161 F. 2d at page 465. It would not seem to be in the public interest to enlarge the recognized category of dilatory motions at the pre-indictment stage, which would have the effect of impeding prosecuting officers, without, except in rare instances, affording defendants any relief not available after indictment or during trial.

The petition, and petitioner's evidence in support thereof, did not disclose that petitioner had yet suffered any violation of his constitutional rights, either under the Fourth or Fifth Amendment. Whether the use against him at the forthcoming trial of the evidence now sought to be suppressed would be a violation of his constitutional rights under the Fifth Amendment may be regarded as doubtful. Quite apart from the question whether such exclusion would be required by constitutional mandate, it is possible that the federal courts, with the ultimate approval of the Supreme Court, should formulate a rule of evidence for federal criminal trials to the effect that evidence voluntarily disclosed by a taxpayer to agents of the Treasury on the faith of the announced voluntary disclosure policy should be excluded from evidence in the event of a subsequent indictment of the taxpayer. Cf. McNabb v. United States, 1943, 318 U.S. 332, 341, 63 S.Ct. 608, 87 L. Ed. 819. We do not determine these questions now, nor do we intend to intimate any opinion thereon; for we think that such questions as to the admissibility of evidence which may be produced by the government at some future criminal trial ought not to be determined by the district court, or by us on appeal, on a pre-indictment petition for the suppression of evidence such as the one filed in the case at bar.

■ Our conclusion is that the district court should have dismissed the petition as lacking in equity, which of course would have been without prejudice to the right of petitioner, in the event of indictment, to raise at some appropriate stage, whether before trial or during the trial,[1] the question as to the admissibility of the evidence disclosed by him in reliance on the Treasury's announced voluntary disclosure policy.

■ We have considered somewhat whether the handing down of the indictment on February 21, 1952, rendered this appeal moot. It is a curious situation. The fact that the petition to suppress was filed as an independent proceeding prior to indictment was the only thing that made the district court's order thereon a "final decision" appealable under 28 U.S.C. § 1291. If the motion to suppress had been filed after indictment, for the sole purpose of procuring the exclusion of evidence at a forthcoming trial, an order denying such motion would not have been a "final decision" but rather an unappealable interlocutory order entered in the course of the criminal case. Cogen v. United States,

---

1. Cf. Nardone v. United States, 1939, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307.

1929, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275.[2] But presumably if the order of the district court was a "final decision" when rendered, it did not lose that characteristic from the fact that an indictment was subsequently handed down. Cf. United States v. Poller, 2 Cir., 1930, 43 F.2d 911. And though the finding of a true bill by the grand jury defeated one of the objects of petitioner in his motion to suppress, the petition did not thereby become entirely moot, for petitioner still remained interested in the relief sought in so far as it might be directed to the suppression of the evidence at the trial. Probably, therefore, as a technical matter, the present appeal should not be dismissed as moot. We do not dwell upon the point at greater length, because whichever of the two dispositions we chose to make of this appeal, the practical effect would be the same; there would be no determination whether the evidence in question should be excluded at the trial, but that question would be left open for determination in the course of the pending criminal proceeding.

We may add that, even accepting appellant's contentions to the full, we could in no event vacate the order with a direction to the district court to enter an order suppressing the evidence at the trial. The reason for that is that the district court entered its order of denial after hearing petitioner's witnesses only, deeming it unnecessary to hear the witnesses which the United States attorney was prepared to present. If it be assumed for the moment that evidence disclosed to the Treasury officials on the faith of the announced voluntary disclosure policy, and in compliance with its conditions, should be excluded from evidence in a subsequent criminal trial, it would seem that the taxpayer would

have to satisfy the court that he made a voluntary, good faith disclosure of all data necessary to a correct computation of his income tax deficiencies, and that he made such disclosures before an investigation was under way.

The order of the District Court denying the petition is vacated, and the case is remanded to the District Court with direction to enter an order dismissing the petition for want of equity.

---

2. It is true, as appears from an examination of the record in the Cogen case, that the motion there prayed for an order for the return of the seized property "and for a further order to the United States attorney directing him, or his assistants, not to offer the same in evidence or to offer any testimony on any transaction mentioned in any of the seized papers upon the trial." It was

assumed by the parties and by the court, we suppose correctly, that the order denying the motion was not appealable unless it could be deemed a "final decision". It was not suggested that the order was in effect an interlocutory order refusing an injunction, a type of interlocutory order then immediately appealable under § 129 of the Judicial Code. now found in 28 U.S.C. § 1292.