**UNITED STATES of America, Appellant,**

v.

**John P. CALANDRA, Appellee.**

No. 71–1999.

United States Court of Appeals, Sixth Circuit.

July 27, 1972.

Shirley Baccus-Lobel, Roger A. Pauley, David Margolis, Robert D. Gary, Steven R. Olah, Attys., U. S. Dept. of Justice, Washington, D. C., Henry E. Petersen, Acting Asst. Atty. Gen., Crim.

Div., Frederick M. Coleman, U. S. Atty., for appellant.

Robert J. Rotatori, Gerald S. Gold, Gold, Rotatori, Messerman & Hanna, Cleveland, Ohio, for appellee.

Before PECK, MILLER and KENT, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The United States has appealed from a decision of the United States District Court for the Northern District of Ohio, In re Calandra, 332 F.Supp. 737 (1971), in a proceeding ancillary to a grand jury investigation suppressing certain evidence seized from the place of business of a witness, the appellee Calandra, subpoenaed to testify before the grand jury, ordering the return of that evidence, and specifying that the witness need not answer any questions before the grand jury based on the suppressed evidence. While the validity of the search and seizure is presented, the principal issue is whether a district court may consider in a proceeding ancillary to a grand jury investigation a motion to suppress on Fourth Amendment grounds on behalf of a witness for whom the Government has requested immunity pursuant to 18 U.S.C. § 2514.

During the fall and winter of 1970–71 federal agents conducted a rather extensive investigation of certain alleged bookmaking operations. Joseph Lanese was thought to be the central figure in these illegal activities. On December 15, 1970, a number of search warrants were issued based on the information set forth in a master affidavit which purported to reflect the illicit gambling operation. The information contained in the affidavit was the fruit of court-ordered wiretapping, physical surveillance of suspected participants in the alleged operation, and the statements of six informants. Among others, searches of the person, residence, and place of business of the appellee were authorized. In this case, we are concerned only with the search of Calandra's place of business, the Royal Machine and Tool Company.[1] The warrant specifically authorized the seizure of bookmaking records and gambling paraphernalia.

The business occupies a two-story building. The ground floor occupies approximately 13,000 square feet and houses industrial machinery and inventory. The offices of the company are found on the second floor. A general office area occupying approximately 1500 square feet contains the desks of four employees, drawing tables, and filing cabinets for current records. To the south and separated by a partition, is the office of Calandra, president of the company, and his secretary. The office contains desks, filing cabinets and a safe. North of the general office area is a room in which older files and business documents are stored. On December 15, 1970, these premises were subjected to an extensive and apparently careful four-hour search. The record reveals that Government agents spent more than three hours searching appellee's office, meticulously examining virtually every document found therein.

1. The only information in the master affidavit pertaining directly or indirectly to the premises of the Royal Machine and Tool Company was: (1) the observation that Lanese's automobile had been parked outside the building on one occasion, (2) the observation that an automobile registered in the company's names had been parked in front of Lanese's residence, and (3) the statement:

"Informant 1 advised on December 4, 1970, that JOHN CALANDRA, as of that date, would accept bets and lay off bets, on sports event. [sic]. CAL-ANDRA is a close associate of ANTHONY DELSANTER. CALANDRA uses his home and office on East 163rd Street for his bookmaking operation." Informant 1 was characterized in this fashion:

"[H]e has personal knowledge of the bookmaking activity of Joseph Lanese in that for over an extensive period of time he has made himself or personally known of others who have made wagers with or received line information from Joseph Lanese."

No gambling paraphernalia was discovered during this exploration.[2] However, one of the searching agents found and seized what he believed to be "loansharking" records. While examining promissory notes found in a metal box stored in a filing cabinet, this agent noticed the name of Dr. Walter Loveland on a card. The card indicated that Loveland had been making periodic payments to Calandra. The agent stated in an affidavit that his suspicions were aroused by this card because he was aware that the United States Attorney's office in Cleveland was also investigating violations of 18 U.S.C. §§ 892, 893 and 894, which proscribe certain credit transactions, and that Dr. Loveland had been a victim of the loansharking enterprise which was under investigation. Various items were then seized, including books and records of the company, stock certificates and address books. In his brief, the appellee points out that while the appellant characterizes some of these items as "loansharking" materials, the nature of the materials seized has not yet been determined.

On March 1, 1971, a special grand jury was called to investigate further violations of federal laws proscribing various "loansharking" practices in the Cleveland area. Calandra was summoned to testify on August 17, 1971. He refused to testify, invoking his Fifth Amendment privilege against self-incrimination. The Government requested the district court to grant Calandra immunity pursuant to 18 U.S.C. § 2514 as he was not the target of the investigation. It is acknowledged by the Government that the questions which it intended to put to Calandra were based on the items seized during the December 15, 1970 search. In response, Calandra requested postponement of the hearing on the immunity question so that he might prepare his motion to suppress the evidence seized as a result of the search of the Royal Machine and Tool Company

and on the ground that he had not received proper notice pertaining to the immunity proceedings. The district court granted the postponement and set the matter for oral hearing on August 27, 1971.

On August 17, 1971, Calandra moved for suppression and return of the evidence in question. The motion challenged the validity of the search on a number of grounds, asserting that the warrant was insufficient in a number of respects and that the search itself went beyond the scope of the warrant. At the August 27 hearing, Calandra stipulated that he would refuse to answer questions based on the seized materials. The district court ordered the items seized from his place of business suppressed, directed their return and specified that Calandra need not answer any questions before the grand jury based on the suppressed evidence. The court based its order on findings that due process "allows a witness to litigate the question of whether the evidence which constitutes the basis for the questions asked of him before the grand jury has been obtained in a way which violates the constitutional protection against unlawful search and seizure" 332 F.Supp. at 742; that the affidavit was insufficient to establish probable cause to search Royal Machine and Tool Company for gambling paraphernalia; that the evidence seized was not within the immediate "plain view" of the officers; and that the search was invalid because it was a "general search," going beyond the scope of the warrant and the permissible limits of the Fourth Amendment.

■ We turn first to the propriety of Judge Battisti's consideration of Calandra's Fourth Amendment claims. In the district court, the Government contended that a witness called before the grand jury lacks standing to move for pre-indictment suppression of evidence. It is the Government's view that "[t]he scope

2. One football information sheet of general circulation was taken from the desk of an employee.

of the exclusionary rule, or, what is the same thing, standing to suppress the fruits of an illegal search and seizure, has been limited to one who is (1) the subject of the illegal search and (2) the person against whom the evidence is sought to be admitted." While it is, in fact, clear that Fourth Amendment claims may not be raised vicariously Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), it is currently a matter of serious debate whether one whose Fourth Amendment right to privacy has been violated by an illegal search and seizure and is therefore a proper party aggrieved in the *Alderman* sense may assert such right when called as a witness before the grand jury. See especially In re Egan, 450 F.2d 199 (3rd Cir. 1971) aff'd 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed. 2d 179 (1972); In re Evans, 452 F.2d 1239 (D.C.Cir.1971) (cert. denied 408 U.S. 930, 92 S.Ct. 2479, 33 L.Ed.2d 342); United States v. Gelbard, 443 F.2d 837 (9th Cir. 1971) rev'd 408 U.S. 41, 92 S. Ct. 2357, 33 L.Ed.2d 179 (1972); Application of United States, 427 F.2d 1140 (5th Cir. 1970); and Carter v. United States, 417 F.2d 384 (9th Cir. 1969) (cert. denied 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (1970)).

In Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the Supreme Court first applied the exclusionary rule, although not in the grand jury context, as a means of giving effect to the Fourth Amendment guarantee of privacy. The Court emphasized the duty of the federal judiciary not to sanction official disregard of the prohibition of unreasonable searches and seizures. That not only the particular items seized illegally but also the "fruit" of a Fourth Amendment violation are to be made unavailable to law enforcement officials was determined in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The very broad language of *Silverthorne* is tempered by the fact that traditional principles of standing govern the mat-

ter of who may seek suppression of the "fruit" of an illegal search and seizure. In Alderman v. United States, *supra*, the Supreme Court held that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself . . . . " 394 U.S. at 171–172, 89 S.Ct. at 965. This rule that Fourth Amendment rights may not be asserted vicariously is consistent with the general rule of standing relied upon by the court below which was enunciated in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The Court there held that the standard for determining whether a person possesses requisite standing "concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830.

The motion to suppress considered by Judge Battisti was filed pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure which provides that "[a] person aggrieved by an unlawful search and seizure" may move for the "return" and "suppression" of the evidence illegally seized. Rule 41(e) is "the statutory direction governing the suppression of evidence acquired in violation of the conditions validating a search." Jones v. United States, 362 U. S. 257, 260, 80 S.Ct. 725, 730, 4 L.Ed.2d 697 (1960). The Advisory Committee's notes report that with one exception not here relevant, Rule 41(e) "is a restatement of existing law and practice." In re Fried, 161 F.2d 453, 458 (2nd Cir. 1947); 3 Wright, Federal Practice and Procedure, § 673, at 105 (1969). The Supreme Court made plain in both Alderman v. United States, *supra*, and Jones v. United States, *supra*, that the requirement of standing to assert the exclusionary rule articulated in Weeks

v. United States, *supra*, and applied to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is given expression in the "person aggrieved" language of Rule 41(e).

It has been widely held that a motion to suppress by a target defendant is proper even where no prosecution is pending. In re Fried, *supra*; and *see* Centracchio v. Garrity, 198 F.2d 382 (1st Cir. 1952).

It was the view of the court in Centracchio v. Garrity, *supra*, that it should "respect the clear line of authority in the search and seizure cases," in light of the Advisory Committee's statement that Rule 41(e) was intended to be "merely a restatement of existing law and practice." After quoting the rule, the court observed that "[t]his rule does not specify the time when such a motion may be made, and presumably is broad enough to sanction the filing of such a motion in the district court prior to indictment. 198 F.2d at 387." It is true that the court did not grant the motion to suppress, pointing out that "[j]udicial interference of this sort . . . must . . . be regarded as the exception rather than the rule. 198 F.2d at 387." However, the court's ruling was not based on a rejection of its analysis of the appropriateness of a pre-indictment motion under Rule 41(e) but rather on the ground that it was "clear that the evidence in question did not come into the possession of the government officials in violation of petitioner's rights under the Fourth Amendment. 198 F. 2d at 387." It is significant to note that while generally disapproving pre-indictment motions to suppress, the court pointed out one substantial reason why Rule 41(e) motions have been found appropriate exceptions to that policy. The court stated:

> But in the unlawful search and seizure cases *there has already*, by hypothesis, *been a seizure of property or effects* from the possession of the petitioner *in violation of his constitutional right*. 198 F.2d at 387.

The source of a district court's jurisdiction to entertain a motion to suppress prior to indictment lies in the inherent "disciplinary powers of the court." Go-Bart Importing Co. v. United States, 282 U.S. 344, 355, 51 S.Ct. 153, 75 L.Ed. 374 (1930). See discussion in Smith v. Katzenbach, 122 U.S. App.D.C. 113, 351 F.2d 810 (1965). Viewed in this light the argument that recourse to Rule 41(e) is limited to "parties" or "defendants" cannot be supported. A pre-indictment motion necessarily involves one who is not a party. It is for this reason that the pre-indictment suppression motion has, since before the adoption of Rule 41(e), been grounded in the supervisory power of the district court. That an individual subsequently becomes a defendant while another does not cannot be said to cause the first to have standing under Rule 41(e) and the other not. It is the status of the individual as an "aggrieved person" at the time that he files his motion to suppress that is determinative of his or her recourse to a motion to suppress, and not the intention of the United States Attorney to file an indictment against the individual.

Furthermore, contrary to the Government's assertion, the fact that Calandra would be granted immunity and hence could not be "harmed by the evidence" is irrelevant to any resolution of his standing to seek redress through a motion to suppress. The Government's position is a distortion of the nature of the rule announced in Weeks v. United States, *supra*, giving effect to the prohibitions of the Fourth Amendment. While evidence is excluded under the Fifth Amendment to prevent the abridgment of one's rights in the criminal process, the Fourth Amendment, in contrast, was not intended *to protect the rights of a defendant once involved in the process.* Rule 41(e) and the exclusionary rule generally are addressed, as the court in Centracchio v. Garrity, *supra*, pointed out, to the provision of redress for the constitutional violations that have al-

ready occurred.[3] The primary purpose of that redress is deterrence. As the Supreme Court stated in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960):

> The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guarantee in the only effective, available way—*by removing the incentive to disregard it.* 364 U.S. at 217, 80 S.Ct. at 1444. (Emphasis added.)

It is the right of the citizen to security from illicit intrusions upon privacy that the exclusionary principle seeks to guarantee. Additionally, the return and suppression of the fruit of an illegal search serves to give partial redress to the one whose right to privacy has been violated. Suppression may be seen as vindication of the right already infringed. That relevant evidence is suppressed is deemed a cost and not a benefit of the exclusionary rule. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); People v. Defore, 242 N.Y. 13, 150 N.E. 585 (1926).[4]

Arguably, a "person aggrieved" who is a "stranger" to criminal proceedings, ought to have enhanced standing to seek redress under Rule 41(e). Ironically enough, a corollary of the Government's position would seem to be that the "criminal" whose windfall gave concern to Judge (later Mr. Justice) Cardozo would have access to the remedy afforded by Rule 41(e) and the exclusionary rule, whereas an equally aggrieved victim of an unconstitutional invasion of privacy who was not likely to become a defendant would not. Such an anomaly is not justified in terms of the purposes of the exclusionary rule. It is well to recall the Court's statement in Weeks v. United States, *supra*, that "this protection reaches all alike, *whether accused of crime or not,* and the duty of giving

to it force and effect is obligatory upon all entrusted under our federal system with the enforcement of the laws." 232 U.S. at 391–392, 34 S.Ct. at 344. Thus, it is our view that the prospect of immunity in no way affected the standing of Calandra as one entitled to recourse under Rule 41(e) on the ground that he is a "person aggrieved by an unlawful search and seizure."

■ The question remains whether the fact that one has been called as a witness before a grand jury curtails his recourse as a "person aggrieved" to a motion to suppress pending the grand jury proceeding. In Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), the Supreme Court held that a witness subpoenaed in a grand jury investigation of possible violations of the Corrupt Practices Act of 1910 had no standing to question the power of Congress to enact provisions for regulation and control of primary elections of candidates for the office of United States Senator. The Court made explicit the strict duties of one summoned before a grand jury. The court pointed out that "in the ordinary case [it is] no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not." 250 U.S. at 282, 39 S.Ct. at 471. There is no question as to the vitality of the general principles enunciated in *Blair*. It is true as the Second Circuit states in United States ex rel. Rosado v. Flood, 394 F.2d 139, 141 (2nd Cir. 1968), that "[i]t has traditionally been held that such "a witness usually cannot impede collection of evidence by the grand jury even though the issues he seeks to raise could later be litigated—perhaps with success —by an indicted defendant . . . ."

Nevertheless, as we noted at the outset, there is serious debate over the matter of whether the general rule against

---

3. Judge Learned Hand noted in United States v. Poller, 43 F.2d 911, 914 (2nd Cir. 1930), that "it is only fair to observe that the real evil aimed at by the Fourth Amendment is the search itself . . . ."

4. The classic statement of this aspect of the exclusionary rule is, of course, Judge Cardozo's in People v. Defore, 242 N.Y. 13, 150 N.E. 585 (1926), that under such a rule "[t]he criminal is to go free because the constable has blundered."

interference with the investigations of a grand jury applies to a motion to suppress brought by a proper "person aggrieved" by a Fourth Amendment violation. As the First Circuit pointed out in Centracchio v. Garrity, *supra,* the Fourth Amendment is a proper exception to the policy against pre-indictment motions to suppress. The *Blair* Court made crystal clear that the general policy which it stated was subject to "exceptions and qualifications," identifying specifically the Fifth Amendment right not to incriminate oneself, pointing as well to "confidential matters" and indicating that there may be other "special reasons a witness may be excused from telling all that he knows." 250 U.S. at 281, 39 S.Ct. at 471.

The Supreme Court in *Blair* did not of course consider the question whether a motion to suppress the fruit of a violation of the Fourth Amendment constitutes such a "special reason." And, since *Blair*, the Supreme Court has not had occasion to consider whether "a witness may be excused from telling all that he knows" because the questions put to him are the fruit of a violation of the Fourth Amendment. However, the concept of standing to move to suppress has received considerable clarification, as we have noted, since announcement of the exclusionary rule in Weeks v. United States, *supra.*

It is our view that the interests identified in *Blair* and other significant factors, do not override the policy considerations which underpin the exclusionary rule and Rule 41(e). Before describing the relevant interests and attempting to set forth our view of the balance that must be struck, we should note some recent cases which seem to provide support for the Government's position that the investigative process of the grand jury should not be disturbed in order to vindicate the interests which the Fourth Amendment and the exclusionary rule seek to protect. See in this connection, United States ex rel. Rosado v. Flood, *supra*; Carter v. United States, *supra*; Application of United States, *supra*; and United States v. Gelbard, *supra.*

It should be pointed out that in none of these cases did the court deal with the general standing of a "person aggrieved" to vindicate his and society's Fourth Amendment interests.

■ The respective interests involved are not difficult to identify. The Court in *Blair* made plain the weight which it attached to society's interest in a grand jury as an institution free to ascertain the truth through essentially unfettered inquiry, noting that the grand jury "is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation . . . ." 250 U.S. at 282, 39 S.Ct. at 471. The Court has not departed from this view. Furthermore, it must be noted that while such inquiry may assist the prosecution, it may also be in the best interest of a potential defendant. The Supreme Court in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), further emphasized the uniqueness of grand jury proceedings by rejecting an attack on an indictment which was concededly based entirely upon hearsay evidence.

While the importance of the speedy and efficient administration of criminal justice must not be understated in this period of overloaded dockets, it is not at all clear that the procedure approved by Judge Battisti would unduly burden the functioning of the grand jury. Certainly, it was his view as a district judge that it would not. We concur in that view. This is particularly so in the instant case as the alternative to the procedure used below is the raising of the Fourth Amendment through a contempt proceeding, which would, it would seem, be more disruptive.

■ Against the interest of unencumbered inquiry and the efficient administration of justice must be weighed the importance which society attaches to the protection of the Fourth Amendment

guarantee of privacy which is afforded by access to the exclusionary rule and Rule 41(e). In *Egan*, Judge Gibbons states:

> The witness' privacy yields to a paramount public interest even though his testimony may subject him to enmity, ridicule, danger or disgrace. That paramount public interest outweighs considerations of witness privacy because the whole life of the community depends upon how well the institutions of justice perform their role of social lubricator.

Such an analysis subordinates the primary interest which the motion to suppress seeks to advance. As the Court in Elkins v. United States, *supra*, made clear, the purpose of the suppression of the fruit of an unconstitutional infringement of privacy is to remove the incentive for such illicit activity. It is motivated by the view articulated by Mr. Justice Brandeis in his dissent in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928):

> Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example . . . . If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become law unto himself; it invites anarchy.

While it is impossible to verify empirically the effectiveness of suppression in discouraging governmental invasion of privacy, it is not difficult to identify circumstances which increase the incentive to violate Fourth Amendment rights. Where such circumstances are present, the suppression device should be limited only in the face of other demonstrably substantial and overriding interests.

The court below has properly focused upon the serious flaw of the Government's position. Increasingly, our criminal process is concerned not with the isolated individual event but with matters of considerable scope involving numerous persons, some of whom are central to the suspected or alleged crime and some of whom are not. Specifically, this tendency is a result of the increasing concern of law enforcement with "organized crime" and with conspiracies, whether connected with commerce or with violence. Under such circumstances, it is both logical and proper that police should concentrate their greatest effort on the key figures rather than "small fry" of suspected criminal activity. For example, it is agreed that the key to dealing adequately with the trade in heroin is not the "pusher on the street." Under such circumstances, the temptation to ignore the rights of individuals not involved or thought crucial, in order to obtain knowledge useful in investigating the larger suspected illicit enterprise, is natural and understandable.

It is, however, precisely this temptation which the Fourth Amendment and the exclusionary rule were devised to restrain. The Fourth Amendment reflects a considered decision that, in our scheme of government, the individual's right to privacy shall not invariably give way to what is deemed most efficient and expedient in the prosecution of crime. Suppression of the fruit of the violation of that right to privacy, for example, has been considered the most effective means of dealing with the temptation to violate it.

The importance of suppression as a device is directly proportional to the incentive that exists to violate the right. Where, as here, the incentive is greatest, access to the motion to suppress attains maximum importance.

 Furthermore, it is important to emphasize that we deal with a fundamental constitutional claim that is ripe. Calandra's right to privacy has been violated.[5] As a direct result he

5. We do not find it necessary to discuss in detail the questions pertaining to the validity of the search warrant and the search itself. Upon consideration, we are of the view that the district judge was clearly correct in finding that the

finds himself before the grand jury to be asked questions which are the fruit of the intrusion upon his privacy. Given the immunity device, his claim is not one which will be vindicated in the criminal process. Absent the opportunity to raise the claim at this stage in the proceedings Calandra's opportunity for redress is severely limited and at the same time the very substantial incentive for law enforcement officials to combine the illegal search with a grant of immunity at the grand jury stage is unrestrained.

While we do not in any way minimize the importance of the considerations articulated in *Blair* nor the interests of orderly and efficient judicial administration, it is our view that the impact on either by the procedure applied here by Judge Battisti is not great, and that in any event these interests are outweighed by the very substantial interests of citizens to have access to the motion to suppress in circumstances such as these.

The order of the District Court is accordingly

Affirmed.

warrant utterly failed to establish probable cause to search Royal Machine and Tool Company for gambling paraphernalia, and further that the search itself was a general one which far exceeded the scope of the warrant and the permissible limits of the Fourth Amendment.