**In re WORKSITE INSPECTION OF QUALITY PRODUCTS, INC., Appellant.**

**No. 78–1232.**

United States Court of Appeals, First Circuit.

Argued Oct. 2, 1978.

Decided Feb. 16, 1979.

Girard R. Visconti, Providence, R. I., with whom Thomas W. Heald, and Abedon & Visconti, Ltd., Providence, R. I., were on brief, for appellant.

Daniel J. Mick, Atty., Washington, D. C., with whom Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Albert H. Ross, Regional Sol., Boston, Mass., John A. Bryson, Atty., Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Lincoln C. Almond, U. S. Atty., Everett C. Sammartino, Asst. U. S. Atty., Providence, R. I., William Kanter and Allen H. Sachsel, Attys., Civ. Div., Dept. of Justice, Washington, D. C., were on brief, for the Secretary of Labor.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On September 16, 1977, an official of the Occupational Safety and Health Administration (OSHA) applied in district court for a warrant authorizing the inspection of a Cranston, Rhode Island, worksite of appellant Quality Products, Inc. (Quality).[1] Quality is a manufacturer of plastic products. The inspection grew out of an anonymous telephone complaint which OSHA officials received on September 13, 1977, from a person claiming to be an employee of Quality. The caller reported conditions at the Quality plant that the officials believed to be violations of the Act. In particular, the caller complained of a lack of personal protective equipment for employees who poured molten plastic, insecure production hoses that had blown off and sprayed molten plastic on employees, and the presence of two substances, MOCA and ADA-PRENE, near ovens. When OSHA officials attempted to check out these allegations by inspecting the plant on September 15, they were denied entrance by an officer of Quality. He is said to have admitted, however, that the plant did use MOCA, a known carcinogen, without special restrictions and that employees recently had been burned by molten plastic when hoses disconnected. It was upon this information that the application for an inspection warrant was made.

A magistrate issued the warrant and the inspection took place on September 19–20. As a result of the inspection, OSHA on September 22 issued two citations against Quality for failing to maintain adequate records of employee injuries, in violation of 29 C.F.R. 1904.2(A) and 1904.5(A). A further citation based upon the inspection was issued on July 3, 1978. On the record before us, it appears that Quality has contested all three citations administratively and that the Commission has not issued a final order.

Quality also challenged in court the warrant authorizing the inspection. On September 19, 1977, Quality brought a motion before the magistrate who issued the warrant to "stay and recall" his warrant, claiming that the Act's inspection procedures violate the fourth amendment, that the warrant had been issued without probable cause, and that the complaint violated

---

1. The inspection was undertaken pursuant to the Occupational Safety and Health Act, 29 U.S.C. §§ 651, 657, 658, & 663, and 29 C.F.R. 1903.3 & 1903.4. When the inspection in question was commenced, the Supreme Court had yet to rule on whether the Constitution required a warrant preliminary to a compulsory OSHA inspection of premises. The OSHA statute does not call for a warrant. In 1978, the Court ruled that a warrant was mandated. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Lacking statutory guidance relative to OSHA warrants, it is up to courts to structure the procedural operation of the warrant requirement.

OSHA's regulations as it was not in writing and was not made by a current employee. On October 6, after OSHA officials had completed the inspection, the magistrate granted the motion, "vacated and quashed" the warrant, and ordered that "any and all products of any search and investigation pursuant to said Search Warrant [be] ordered suppressed." OSHA contested this disposition before the district judge, who eventually overturned the magistrate on this score. The court ruled that the magistrate lacked authority to reconsider the warrant once it had been executed. The district judge then proceeded to consider the "stay and recall" motion himself, and, treating it as a motion to suppress, denied it on the merits. Quality now appeals from the district court's actions.

 We consider first the authority of the magistrate to pass on the motion to "stay and recall" the warrant once it had been executed. We agree with the district court that the magistrate had no such authority. Doubtless the magistrate could have quashed or withdrawn the warrant, for a proper reason, before it was executed. But it was too late, when the motion was allowed, to recall the warrant, as by then it had been executed. It seems clear both from the magistrate's order and from his reported colloquy with counsel that his main purpose was to prohibit any future use of evidence obtained in the course of the inspection of Quality's premises. Not only would tangible evidence be suppressed, but witnesses would presumably be barred from describing the conditions they found. A magistrate's well-established authority to issue warrants[2] does not encompass this different and more extensive power to declare the fruits of a search inadmissible in subsequent proceedings. We know of no statute or precedent that authorizes magistrates to issue final orders excluding from later use in an administrative or judicial proceeding all evidence emanating from a particular investigation. The statutory law

relating to criminal motions to suppress indicates that they are within the primary jurisdiction of the district court alone, and are not included within the more restricted primary authority conferred upon magistrates. Thus Fed.R.Crim.P. 41(e) and (f) provide that motions to suppress or for the return of property are to be made to a district court. And the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), empowers a district judge in a criminal case to designate a magistrate to hear a motion to suppress and propose findings and a disposition, which matters are subject to de novo determination by the district judge. If a magistrate had primary jurisdiction in such matters, there would of course be no occasion for any such provision. Here no designation of the magistrate by a judge was made, and even if one had been made, it could not have conferred final authority over the suppression motion. *Horton v. State Street Bank & Trust Co.*, 590 F.2d 403 (1st Cir. 1979).

 In the present circumstances, therefore, the district court was entirely justified in overruling the magistrate's action. The magistrate had exceeded the scope of his authority when he acted in the first instance upon a matter that, assuming the district court had jurisdiction at all, see *infra*, fell within the primary jurisdiction of a judge. A magistrate is a judicial officer of the district court in which he sits, and the court may properly rule on questions concerning his role and the scope of his authority. *See DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, 506 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).

The next and more difficult question is whether the district court itself could properly rule on Quality's motion to stay and reconsider the warrant—a motion which the court correctly characterized as in the nature of a motion to suppress. Not content

---

**2.** Magistrates may issue warrants the same as United States Commissioners formerly could. *See* 28 U.S.C. § 636(a)(1). Their authority includes the power to issue OSHA inspection warrants. *Accord, Marshall v. Chromalloy Am. Corp.*, 433 F.Supp. 330, 332 (E.D.Wis. 1977), *aff'd*, 589 F.2d 1335 (7th Cir. 1979).

with holding the magistrate powerless to decide such a motion, the court went on to decide it itself, ruling that the warrant had been properly issued, and denying all relief. While the district court's ruling at first glance seems perfectly sensible on these facts, it raises a fundamental question, which we cannot ignore. That question is whether an employer faced with an OSHA administrative enforcement proceeding may separately litigate in the district court whether evidence obtained in an inspection conducted under a warrant issued by a magistrate should be barred from use in the OSHA case.

This question can be separated into two parts. The first is whether a district court has "jurisdiction" to decide such a suppression motion. The second is to what extent, assuming jurisdiction, a district court should on equitable grounds decline to rule on such a motion, permitting it to be reviewed instead in the ongoing OSHA enforcement proceeding.

On the matter of jurisdiction, there is no statute or rule authorizing a district court to order the suppression of evidence in these circumstances. This is not a suppression motion made ancillary to a criminal proceeding, or indeed any proceeding, in the district court, hence Fed.R.Crim.P. 12 and 41(f) are inapplicable. Rule 41(f) extends only to motions to suppress "in the court of the district *of trial*." [Emphasis supplied]. Rule 41(e) is more in point: it allows a person aggrieved by an unlawful search and seizure to bring a pre-indictment motion "for the return of property" in the district in which the property was seized. While designed for a criminal setting, it arguably could cover a situation where civil adminis-trative proceedings would occur in a different forum. However, Rule 41(e) seems to refer only to cases in which the movant is seeking the return and suppression of tangible evidence belonging to him. Quality's motion did not request the return of property and the record before the district court did not indicate that property was seized.[3] Rule 41(e) is thus of doubtful applicability.

Although Quality's request for relief lacks statutory authority, jurisdictional support is arguably provided by a non-statutory line of cases holding that federal district courts have inherent power to order the suppression or return of unlawfully seized property prior to an indictment. *See, e. g., Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Centracchio v. Garrity,* 198 F.2d 382 (1st Cir.) (Magruder, C. J.), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672 (1952). This power has been labelled the "anomalous" jurisdiction. *Lord v. Kelley,* 223 F.Supp. 684, 688 (D.Mass.1963) (Wyzanski, J.), *appeal dismissed,* 334 F.2d 742 (1st Cir. 1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965). But both the Fifth Circuit in *Hunsucker* and this Circuit in *Centracchio,* while recognizing such a power, have emphasized its "exceptional" as well as anomalous nature, 497 F.2d at 32, 34, and the equitable constraints upon its exercise, 198 F.2d at 386–88.

*Hunsucker* presented a situation not unlike this one. Plaintiff sought relief in the district court from future civil use by the Internal Revenue Service of evidence obtained in a search by federal agents, which had been conducted under a warrant issued by a United States Commissioner.[4]

---

**3.** The July 3, 1978 citation indicates that certain substance samples were taken from the plant during the inspection. The record reveals no indication that the district court was, or had reason to be, aware of the seizure, however.

**4.** One difference between the present case and cases such as *Hunsucker v. Phinney* is that OSHA proceedings had already begun by the time Quality's motion was considered and decided by the district court. This difference is, however, unimportant where the government's proceedings against the movant will in any event be conducted in a forum other than the district court. Where this is so, a motion to suppress in the district court shares the same objectionable qualities as a pre-indictment criminal motion to suppress: the motion proceeding is separate from, and uncoordinated with, the main proceedings. Such piecemeal adjudication encourages delay and wastes judicial and governmental resources. *Centracchio v. Garrity,* 198 F.2d at 387–89; *cf. Sheehan v. Doyle,* 529 F.2d 38 (1st Cir.), *cert. denied,* 429

In discussing the power of the district court to grant relief, the Fifth Circuit said,

"Whether the anomalous jurisdiction extends to cases, such as this one, where the likely future proceeding is at least nominally civil in nature rather than criminal is uncertain. . . . We have encountered only one case, however, in which it appears that the anomalous jurisdiction was exercised where the only likely future proceeding was a civil one . . . ."

The Fifth Circuit never decided the jurisdictional issue. Rather it assumed jurisdiction, but refused, on equitable grounds, to adjudicate plaintiff's suppression claims because of the availability of an adequate remedy at law.

■ For reasons similar to those of the Fifth Circuit in *Hunsucker*, we prefer to avoid a definitive ruling on jurisdiction here.[5] Rather, we agree with the Fifth Circuit that even if the anomalous jurisdiction or some other theory of jurisdiction applies in cases like this, a proposition we do not decide,[6] it should in no event be exercised unless the movant clearly demonstrates that his constitutional rights cannot be adequately adjudicated in the pending or anticipated enforcement proceeding against him. In the present case, as we suspect will be true in the vast majority of OSHA enforcement cases, the challenges to the warrant can be adequately considered in the statutory enforcement proceedings if not by the Commission[7] then by the court of appeals.[8] Quality's specific challenges to the

U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Sheehan v. Doyle*, 513 F.2d 895 (1st Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975).

5. One reason for eschewing a jurisdictional ruling is that we cannot be sure that we have canvassed all the possible bases for jurisdiction. The challenge to a warrant might be made not only in the form of a motion, but through a complaint commencing an independent action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and seeking a declaratory judgment invalidating the warrant and an injunction prohibiting OSHA's use of the inspection's fruits. While there might arguably be jurisdiction over such an action, *see Weyerhaeuser Co. v. Marshall*, 452 F.Supp. 1375 (E.D.Wis.1978), *aff'd*, 592 F.2d 373 (7th Cir.); *but see Blocksom & Co. v. Marshall*, 582 F.2d 1122 (7th Cir. 1978), we think that any such jurisdictional basis would be subject to the same equitable constraints that courts place on the exercise of the anomalous jurisdiction, see discussion *infra*. Injunctive relief, being equitable in nature, of course would be subject to equitable constraints. As far as declaratory relief is concerned, while a declaratory judgment may precisely be neither legal nor equitable in nature, *e. g., American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968), it is clear that "[d]eclaratory judgment is a remedy committed to judicial discretion," *A. L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961), and that the exercise of that discretion is properly informed by considerations of equitable restraint, *Eccles v. Peoples Bank*, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948).

6. The concept of anomalous jurisdiction has been nurtured in a criminal setting, and the

cases in which courts have exercised it have involved requests for return of seized property; this court, for one, has expressed doubt as to its applicability to broader requests for suppression. *See Centracchio v. Garrity*, 198 F.2d 382. While the history of the anomalous jurisdiction may be so limited, and while, in any event, courts have not favored utilization of a suppression remedy in a proceeding separate from that where the evidence to be suppressed will be used, we are reluctant to hold that under no conceivable circumstances does a court have independent power to curtail the abuse of its own process by ordering that the fruits not be used in some different proceeding. Procuring a warrant by the use of fraudulent misrepresentations might be conduct possibly justifying such a remedy. *See* discussion *infra*. We leave the question open.

7. The Commission has held that it will not consider challenges to the validity of a warrant issued by a magistrate. *Secretary of Labor v. Electrocast Steel Foundry, Inc.*, [1978] Empl. Safety & Health Guide (CCH) ¶ 22,702, at 27–401 (April 21, 1978); *Morris v. Department of Labor*, 439 F.Supp. 1014, 1018 (S.D.Ill.1977). But, the use of evidence obtained pursuant to an invalid warrant would be grounds for a court of appeals to reverse a final OSHA order in a proper case.

8. The Occupational Safety and Health Act provides for an administrative enforcement process followed by judicial appellate review. Under the Act, after inspecting a workplace the Secretary of Labor's compliance officers may issue citations to an employer. The citations are to specifically describe safety and health violations, fix reasonable abatement times, and may propose civil penalties. 29 U.S.C.

warrant are: (1) that the anonymous telephone complaint was insufficient under the Act to justify an inspection; and (2) that the warrant application failed to show probable cause. The first of these challenges, presenting a question of statutory construction, is one that the Commission would reach. *See In re Restland Memorial Park*, 540 F.2d 626, 628 (3d Cir. 1976). The probable cause challenge, on the other hand, would not be considered by the Commission,[9] but it can be decided by the court of appeals should the employer lose before the Commission and seek review. No factual findings would be required; the contention gives rise to a question of law that can be decided on the basis of the papers that were presented to the magistrate, as happened when Quality's motion was heard by the magistrate and the district court below. The mechanics of seeing that the application and warrant become part of the record that ultimately goes to the court of appeals is a simple matter. We expect and would require the agency's cooperation to see that this is done, if the employer wishes to preserve the question. Because Quality has an adequate opportunity to litigate its challenges to the warrant in the procedure established by Congress, we hold that even if the district court had subject matter jurisdiction to decide Quality's motion, it should, in equity, have refrained from doing so in these circumstances.

■ The equitable considerations going to the appropriateness of an exercise of the anomalous jurisdiction were identified by the *Hunsucker* court's analysis as follows: (1) does the aggrieved party have an adequate remedy at law?; (2) is an equitable remedy needed to avoid irreparable injury?; and (3) has there been a "callous disregard for . . . constitutional rights?" *Hun-*

*sucker v. Phinney*, 497 F.2d at 34–35. All of these weigh against consideration of the motion to suppress by the district court below. Quality has an adequate avenue under the Act to adjudicate its challenges to the warrant, as we have already seen, and relegating Quality to those statutory procedures will not put Quality in peril of suffering irreparable harm. In addition, as to the substance of Quality's claim, without reaching the merits we can say that Quality has not made a sufficiently clear showing of a fourth amendment violation to justify extraordinary relief. *See id.* at 34–35 n. 10. While these equitable principles narrowly confine the anomalous jurisdiction, there is important practical reason for doing so. The practice of considering motions to suppress in proceedings separate from the proceedings at which the evidence would be used would afford much opportunity for abuse for dilatory purposes, to the detriment and possible disruption of effective law enforcement. *See Centracchio v. Garrity*, 198 F.2d at 387–88; *cf. DiBella v. United States*, 369 U.S. 121, 129, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) (an appeal from an order on a pre-indictment motion to suppress would entail "serious disruption of the conduct of a criminal trial" and may be "an instrument of harassment, jeopardizing by delay the availability of other essential evidence"). Therefore, assuming *arguendo* that courts are ever empowered to entertain such motions in these cases, the practice should be confined to where absolutely necessary to avoid injustice.

■ The only circumstances we can presently foresee where equitable considerations might allow a court in the posture of the district court below to review the validity of an OSHA inspection warrant would be

§§ 657(a), 658(a), 659(a). Citations that are not contested by the employer within fifteen days become final abatement orders. 29 U.S.C. § 659(a). If the employer timely notifies the Secretary of his intention to contest a citation, he is afforded a hearing before an administrative law judge. 29 U.S.C. §§ 659(c), 651(3), 661. The ALJ's report becomes a final order unless within thirty days an OSHA Commissioner directs further review by the Review Commission. 29 U.S.C. § 661(i); 29 C.F.R. 2200.90. If the employer is not satisfied with the Commission's order, he may obtain review of the order in the appropriate court of appeals, 29 U.S.C. § 660(a), whose judgments are reviewable by the Supreme Court on certiorari, 29 U.S.C. § 660(a); 28 U.S.C. § 1254.

**9.** *See* note 7 *supra*.

where an employer states a substantial challenge to the veracity of a warrant application under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and effective consideration of the fourth amendment claim would require an evidentiary hearing. A court of appeals is not competent to conduct, and the Commission apparently will not conduct, such a hearing, so that the claim could not be fully and fairly adjudicated in the statutory enforcement procedure. In such a case, assuming the district court and ourselves were satisfied as to the former's jurisdiction, we might conclude that the absence of an adequate remedy in the enforcement procedures overcame the equitable constraints we have just discussed.

■ There is finally the question of our appellate jurisdiction. While neither of the parties has challenged our jurisdiction, the Supreme Court in *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614, held that a district court order granting or denying a pre-indictment motion to suppress evidence allegedly obtained through an unreasonable search and seizure is not appealable. *See Shea v. Gabriel*, 520 F.2d 879 (1st Cir. 1975). The instant situation is distinguishable because there will be no further opportunity to raise the challenge to the search in the court below or any other district court. *Compare DiBella*, 369 U.S. at 129 & n. 9, 82 S.Ct. 654. We, moreover, are exercising our appellate jurisdiction in a manner consistent with the principles underlying *DiBella*, to indicate that only in the most extraordinary circumstances, if at all, may suppression motions be entertained in this class of cases. This opinion will have misfired badly if it is read as inviting piecemeal review; we will deal summarily with frivolous trips to the district court followed by frivolous appeals. For much the same technical reasons that Chief Judge Magruder set out in *Centracchio*, 198 F.2d at 385; *see also Sheehan v. Doyle*, 513 F.2d 895, 898 (1st Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975), we believe that the ruling of the court below was, in these special non-criminal circumstances, a final order under 28 U.S.C. § 1291. *See In re*

*Restland Memorial Park*, 540 F.2d at 627 & n. 3.

We accordingly remand to the district court with directions to vacate its order denying Quality's motion in the nature of a motion to suppress, and to enter an order in lieu thereof dismissing said motion for want of equity without prejudice to pursue the same in the OSHA enforcement proceeding.

*So ordered.*