William E. BROCK, United States Secretary of Labor, Petitioner,

v.

BROOKS WOOLEN COMPANY, INC., and Occupational Safety and Health Review Commission, Respondents.

No. 85–1424.

United States Court of Appeals, First Circuit.

Argued Nov. 13, 1985.

Decided Jan. 29, 1986.

Andrea C. Casson, Asst. Counsel, Washington, D.C., for Appellate Litigation, U.S. Dept. of Labor, was on brief, for petitioner.

Edward Woll, Jr., with whom Katherine J. Ross, Sullivan & Worcester, Boston, Mass., were on brief, for respondents.

Before COFFIN and BOWNES, Circuit Judges, WYZANSKI,* Senior District Judge.

COFFIN, Circuit Judge.

This petition requires us to decide whether an administrative law judge erred when he invalidated a search warrant and vacated safety citations against the company subjected to the search. For reasons we discuss below, we affirm.

FACTS ·

Brooks Woolen Co. (Brooks) produces textiles at a plant in Sanford, Maine. On October 3, 1978, a compliance officer for the Occupational Safety and Health Administration (OSHA) received a telephoned

* Of the District of Massachusetts, sitting by desig-     nation.

complaint from an employee of Brooks alleging unsafe conditions relating to carding machines in the plant. Two weeks later, the compliance officer sought to conduct an inspection of the plant, but the company refused to allow it. The compliance officer obtained a warrant from a United States magistrate and eventually inspected Brooks' workplace pursuant to the warrant. OSHA subsequently cited Brooks for a number of alleged violations of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678. Brooks contested the citations, which triggered proceedings before the Occupational Safety and Health Commission (the Commission).

In January 1979, while Commission proceedings were pending, Brooks filed an action in federal court in Massachusetts challenging the warrant application for failing to establish probable cause and seeking suppression of the evidence obtained in the inspection of Brooks' facility. The district court dismissed Brooks' action on October 19, 1979, finding that Brooks had failed to exhaust its administrative remedies and that it had not met its burden of demonstrating that its objections to the warrant required an evidentiary hearing.

Meanwhile, Brooks had simultaneously been challenging the sufficiency of the warrant affidavit in proceedings before the Commission. At a hearing on August 16, 1979, the Commission ALJ denied Brooks' motion to stay the administrative proceedings in light of the federal court action, and granted Brooks discovery "relevant to the claim that the warrant application contained one or more false statements made knowingly, intentionally or with reckless disregard for the truth". A hearing on Brooks' motion to suppress was held October 9, 1979, ten days before the district court dismissed the complaint before it. On March 27, 1980, the ALJ issued his decision, invalidating the warrant, suppressing the evidence obtained during the

inspection, and vacating the citations against Brooks.

The Secretary of Labor petitioned for review, which was granted, but the Review Commission was unable to obtain the majority vote needed to take affirmative action. The Review Commission therefore agreed to vacate the direction for review, leaving the ALJ's decision as the final Commission order. The Secretary then appealed to this court.

DISCUSSION

The central question of this case is whether the ALJ was justified in invalidating the warrant to search Brooks' plant. The Secretary claims that the ALJ's decision was based primarily on evidence obtained through discovery that never should have been granted. The Secretary argues that Brooks failed to make a sufficient showing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to entitle it to a subfacial challenge to the warrant application. In *Franks*, the U.S. Supreme Court held that a hearing on the veracity of a warrant application is mandated only upon a substantial preliminary showing that the warrant affidavit contained deliberate or reckless falsehoods necessary to the probable cause finding. *Id.* at 155–56, 98 S.Ct. at 2676. Moreover, the Secretary argues, the district court's dismissal of Brooks' action was *res judicata* on the issue of whether Brooks was entitled to discovery and an evidentiary hearing.

■ To dispose first of the *res judicata* point, we note that by the time the district court decision was issued, the ALJ already had granted discovery and held a suppression hearing. It can hardly be that the federal court judgment precluded something which had occurred before the judgment was issued.[1] In addition, we do not believe the district court decided that Brooks was not entitled to an evidentiary hearing before the ALJ on its warrant chal-

---

**1.** Our conclusion that the sequence of events makes moot the *res judicata* issue means that we need not address Brooks' contention that the Secretary failed to raise the defense of *res judicata* before the ALJ.

lenge. The text of the district court opinion reads, in its entirety, as follows:

"It is undisputed that plaintiff has not exhausted its administrative remedies. *See* 29 U.S.C. 659, 660, 661. Indeed, plaintiff concedes that it has had a hearing before the administrative law judge on the very issue before this court, and that the administrative law judge has the matter under advisement.

"Moreover, plaintiff has not sustained its burden of demonstrating that its objections to the OSHA warrant require an evidentiary hearing. *See In re Worksite Inspection of Quality Products, Inc.,* 592 F.2d 611 (1st Cir.1979).

"Defendants' [sic] motion to dismiss is granted."

Rather than holding that Brooks was not entitled to an evidentiary hearing at all, this opinion seems to recognize that a hearing in federal court was not appropriate. Indeed, this seems to be the only sensible interpretation of the two-paragraph order. If the district court had been ruling that *no* evidentiary hearing was appropriate in this case, he would not have included the first paragraph, which appears to accept Brooks' right to the already conducted administrative hearing. Moreover, this reading is consistent with our opinion in *Quality Products,* relied on by the district court. We held there that a party must pursue its administrative remedy unless it "clearly demonstrates that [its] constitutional rights cannot be adequately adjudicated in the pending or anticipated enforcement proceeding...." 592 F.2d at 615. At the time *Quality Products* was decided, we believed that, as a matter of policy, the Commission would not conduct a hearing on the veracity of a warrant affidavit, *id.* at 615 n. 7, 616–17, and so we suggested

that a *Franks v. Delaware* challenge might have to be resolved in the district court. *Id.* at 616–17. In this case, however, the district court recognized that the Commission already had held a hearing to probe the veracity of the warrant, and there was thus no reason to lift the normal exhaustion requirement.

■ As to the propriety of the grant of discovery and an evidentiary hearing, we note first that the Secretary failed to object when the ALJ first announced, at the August 16, 1979, hearing on Brooks' motion to stay the administrative proceedings, that Brooks was entitled to discovery on the issue of probable cause.[2] Between that time and the next proceeding in the case, Brooks deposed two OSHA employees. On September 17, when the ALJ held a brief hearing before rescheduling the suppression hearing that had been set for that day, the Secretary lodged an objection only to the specific order that it disclose to Brooks a document entitled the "High Hazard Industry Inspection Planning Guide", a page of which had been attached to the warrant application. The Secretary did *not* challenge the underlying assumption that Brooks was entitled to discovery in support of its probable cause challenge, nor did the Secretary challenge the ALJ's order for production of the full text of the employee complaint which led to the OSHA inspection. It was not until September 18, when the Secretary filed a motion seeking rescission of the ALJ's order for production of the high hazard guide, that the Secretary emphasized the limited nature of the warrant challenge mandated by *Franks v. Delaware.* In that document, however, as well as at the suppression hearing held on October 9, the Secretary's *Franks* argu-

---

**2.** In his reply brief, the Secretary points out that in a July 20, 1979, Opposition to Respondent's Motion for Stay of Proceedings, he stated the reasons why Brooks had failed to make a proper *Franks* showing. The argument made at that time, however, was only that an evidentiary hearing in *federal court* was not *required* under *Quality Products.* We believe that is a different issue from whether an ALJ may order discovery and a hearing on a warrant application, a con-

clusion consistent with the Secretary's failure to raise *Franks* at the August 16 hearing.

We note that the Secretary, prior to the August 16 hearing, had opposed Brooks' request for leave to take depositions only on the grounds that Brooks had sufficient information about the alleged violations and that the company had access to less burdensome and time consuming methods of discovery.

ment was confined to the issue of the high hazard guide and whether he should be required to disclose it to Brooks.[3]

We believe this history amounts to waiver by the Secretary of the argument that Brooks failed to meet the threshold requirements laid out in *Franks v. Delaware* for making a subfacial challenge to a search warrant application.[4] Without deciding whether Brooks, in fact, met the *Franks* requirements, or whether it needed to, we thus shall consider only whether the ALJ, in light of all the evidence before him, properly invalidated the warrant to search Brooks' plant, and whether he then properly suppressed the evidence obtained in the search. *See West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 959–60 (11th Cir. 1982) (not reversible error to hold *Franks* hearing without proper showing).

We emphasize that our approach does not mean that we endorse granting discovery and an evidentiary hearing on the validity of an OSHA search warrant affidavit without some showing of probable falsity. We recognize that the Supreme Court had several substantial considerations in mind when it narrowly circumscribed the situations in which a subfacial warrant challenge is required. *See Franks v. Delaware,* 438 U.S. at 164–67, 98 S.Ct. at 2680–81. We also concede the importance of enforcing the Occupational Safety and Health Act without undue delay. *See West Point-Pepperell, Inc. v. Donovan,* 689 F.2d at 960. At the same time, however, we observe that *Franks* does not *proscribe* scrutiny of warrant affidavits in the ab-

sence of the substantial showing that that case specifies; *Franks* merely holds that subfacial challenges are not *mandated* to protect a defendant's constitutional rights unless the specified showing is made. Thus, in the case of an administrative search warrant, where the probable cause required to secure the warrant is less than that necessary for a criminal warrant, *see, e.g., Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978); *Donovan v. Enterprise Foundry, Inc.,* 751 F.2d 30, 33 (1st Cir.1984), it may well be that an ALJ should have some discretion to probe alleged falsehoods brought to his or her attention, even if the warrant challenge falls short of the *Franks* standards. *Cf. West Point-Pepperell,* 689 F.2d at 959 (adopting *Franks* standard for OSHA search warrants, restricting allowable discovery). But since the issue is not before us, we leave to another day discussion of the existence and scope of any discretion.

We thus move to our discussion of the alleged falsehoods in the warrant application, and the ALJ's decision to invalidate the warrant and suppress evidence as a result of them. Under *Franks v. Delaware,* only statements which are deliberately or recklessly false must be set aside, 438 U.S. at 171, 98 S.Ct. at 2684. "Allegations of negligence or innocent mistake are insufficient" to trigger the *Franks* procedures. *Id.* In reviewing the ALJ's findings on this issue, we are limited by 29 U.S.C. § 660(a), which provides that Commission findings "with respect to questions

---

3. In his October 5 reply to Brooks' motion for sanctions, the Secretary made a general reference to *Franks* and the insufficiency of the record here to support a subfacial warrant challenge. By this time, however, the ALJ already had ordered depositions and disclosure of the employee complaint, and we would find it difficult to hold that the ALJ should have closed his eyes to evidence of defects in the warrant application already obtained through procedures to which the Secretary had not objected.

4. Whether the ALJ believed that Brooks had made a sufficient *Franks* showing is somewhat unclear. Under *Franks,* which was correctly described by the ALJ at an August 16, 1979

hearing, it would seem that the ALJ should have made a preliminary finding of probable falsity before ordering discovery and a hearing on the validity of certain statements in the warrant application. At that August hearing, the ALJ expressed doubt that Brooks had made a sufficient showing to mandate an evidentiary hearing, but he nevertheless granted the company discovery so that it could try to do so. In his Order No. 8, the ALJ noted that "Brooks had made out enough of a preliminary showing to justify the discovery". Whatever his view of Brooks' compliance with the standards in *Franks,* it is evident that the ALJ felt that Brooks had made *some* showing of falsity.

of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." We must also accept reasonable factual inferences drawn by the Commission. *Donovan v. Daniel Construction Co.*, 692 F.2d 818, 820 (1st Cir. 1982). If the factual conclusions are adequately supported, then we believe the ALJ is entitled to great deference in his decision to exclude the evidence obtained as a result of the search. In such a case, we agree that a federal court of appeals should "review the Commission's evidentiary rulings in individual cases only for Fourth Amendment reasonableness and nonarbitrary application", *Smith Steel Casting Co. v. Donovan*, 725 F.2d 1032, 1036 (5th Cir.1984).

The warrant application, which was signed and sworn to by the OSHA compliance officer, stated in pertinent part:

"1. Brooks Woolen Company, Inc. is engaged in producing woolen textiles. During the course of its business, employees operate, among other machines, carding machines, which form raw material into yarn.

"2. On October 3, 1978, I received a telephone call at the OSHA Concord, New Hampshire Area Office from a person who identified himself as an employee of Brooks Woolen Company, Inc. The employee stated that he was required to place his hands inside the guards on the carding machines while the machines were in operation. He also stated that some other guards on the machines were not being properly maintained. Finally he stated that the gates providing general access to the carding machines were broken and not properly interlocked.

"3. If the facts are as stated in the above paragraph, Brooks Woolen Company, Inc. is in violation of 29 CFR 1910.-212(a). Employees operating the carding machines without proper guarding are exposed to the hazard of losing fingers or hands.

"4. Brooks Woolen Company, Inc. was previously cited for violations of 29 CFR 1910.212(a) on August 20, 1976 and May 3, 1977. The later citation was issued as a failure to abate citation. Both citations involved the carding machines referred to above. On August 20, 1976, May 3, 1977, and April 11, 1977, Brooks Woolen Company was also cited for other violations of the OSHA standards, which involved conditions throughout the plant. See Exhibit C. Every inspection of Brooks Woolen Company, Inc. has resulted in the issuance of at least one citation under the Occupational Safety and Health Act.

"5. In the settlement agreements involving the previous citations, Brooks Woolen Company, Inc. agreed to provide progress reports to the Concord Area Office concerning the cited items. No such progress reports have been received by the Area Office.

"6. In the High Hazard Industry Inspection Planning Guide (safety), Revised August 28, 1978, Brooks Woolen Company, Inc. is specifically listed in the aforesaid guide as a high hazard industry within the State of Maine. (See Exhibit A, attached hereto)."

We note first that, on its face, this application appears to state sufficient probable cause for an OSHA search, at least for an inspection of the carding machines alleged to be the source of the alleged safety violations. *See Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1068–69 (11th Cir.1982) (noting conflicting precedent on whether OSHA inspection conducted pursuant to employee complaint "must bear an appropriate relationship to the violation alleged in the complaint").[5] An employee complaint bolstered by the sorts of evidence contained in paragraphs four through six establishes at least "a reasonable belief that a violation has been or is being committed", *id.* at 958. *See also Marshall v. Horn Seed Co.*, 647 F.2d 96, 103 (10th

---

**5.** Although not significant for our disposition, Brooks officials stated in affidavits that they did not object to an inspection limited to the carding area but only to a safety inspection of all work areas.

Cir.1981) (detailing sorts of corroborative evidence needed to establish probable cause based on employee complaint). However, the ALJ's decision to invalidate the warrant came not from a finding that the application failed on its face but from his findings as to facts and circumstances underlying the application. The ALJ addressed three sections of the warrant application separately, finding that none survived as a basis for probable cause. We believe it is more appropriate to scrutinize the application in its entirety to determine whether "there remains sufficient content ... to support a finding of probable cause", *Franks*, 438 U.S. at 172, 98 S.Ct. at 2684.

We begin with paragraphs two and three of the warrant application, which contain an account of the employee's telephoned complaint, and an allegation that the conditions complained of violate an OSHA regulation. The compliance officer who received the telephone call wrote down the following transcription:

"1. Not maintaining guards around cards.

"2. Requiring oilers to oil machine while running from inside of the barrier guards.

"3. Gates providing access to guarded area around cards are not interlocked to machines. Many gates are broken off.

"4. "Employee told to stay off machine and be careful while oiling cards."

The original complaint form, which was submitted at the suppression hearing, contained a notation from the compliance officer's supervisor directing that point four not be included in the warrant application. Thus, the safety instruction was deliberately omitted from the typed version of the complaint presented to the magistrate.

The ALJ found that the compliance officer disclosed only part of the employee's report, "with the purpose and probable effect of preventing the magistrate from learning about evidence which would give him ... the true picture." Because the

compliance officer and others failed to act with the high degree of fairness required in an *ex parte* warrant setting, and instead "acted with reckless disregard for the truth", the ALJ held that paragraphs two and three in the application should be struck in their entirety.

We find that the evidence, including testimony from the compliance officer, sufficiently supports the ALJ's findings as to the motivations and standard of care with which the Secretary's representatives acted in this instance. For example, the compliance officer stated at his deposition that he believed the complaint had been presented verbatim to the magistrate: "The supervisor can grammatically edit it, but the basic contents of the complaint is there, almost word for word." If minor editing is the normal procedure, then it is plausible that what happened in this case resulted from at least "a reckless disregard for the truth"; it could have been an attempt to depict Brooks in the harshest possible light in order to encourage the magistrate to issue the warrant.

The complication here, even once we accept this interpretation of the facts, is that the magistrate struck the entire employee complaint in response to the omission of the employer's safety warning. The Secretary correctly argues that *Franks* specifically provides that only statements proven to be deliberately or recklessly false are to be omitted from a warrant application and that the application may stand on what remains. *See* 438 U.S. at 156, 171–72, 98 S.Ct. at 2684. The Secretary thus claims that even if we eliminate the statement that oilers are required to oil machines from inside the barrier guards on the theory that the omitted statement arguably negates it,[6] the other two statements in the employee complaint should survive.

While this argument has technical appeal, particularly in light of the ALJ's discussion of paragraphs two and three as a separate basis of probable cause, it ulti-

---

**6.** We note that Brooks also argues that imposing this requirement on the oilers is not a violation in light of settlement agreements between the company and the Secretary. *See* discussion of settlement agreements below.

mately fails. Elimination of the employer warning was but one of a series of misleading omissions and actual false statements relating to the employee complaint and to Brooks' compliance history relative to carding machine violations. Unlike a warrant application in which the falsehood can be traced to one sentence or paragraph that can be isolated easily and deleted, this application suffered from the cumulative effect of its multiple problems. We hold that, taken together, the defects in paragraphs two through five of the warrant application provided substantial evidence for the ALJ's finding that no showing of probable cause was made based on the employee complaint.

Paragraph four of the warrant application was particularly deceptive. It refers to two previous citations for violations involving the same machines mentioned in the telephone complaint. This information normally would lend credibility to the employee complaint. The paragraph did not reveal, however, that the guards and interlocking system in the carding area were the subject of a specific provision in a settlement agreement which resolved a prior case between Brooks and the Secretary. The agreement allowed Brooks to remedy a guarding violation by an alternative method that, it seems, may not have been consistent with OSHA regulations but was nevertheless approved in this instance.

In light of the settlement agreement, we are unable to determine whether the employee complaint established even administrative probable cause to believe that viola-

tions existed and, whether or not the employee's allegations were actionable, we believe the decision to withhold the content of the settlement agreement from the magistrate is properly viewed as a reckless omission of vital information.[7]

Paragraph four appears to be deficient in another aspect. It refers to two prior citations, including one for a failure to abate a previous carding machine violation. But this failure to abate citation was withdrawn in a second settlement agreement. We realize that withdrawal of the complaint does not necessarily mean that the problem did not exist at the time of the later inspection. In fact, the record suggests that it may have been this continuing problem which led the parties to adopt the alternative guarding method approved in the first settlement agreement. Whatever the specific facts surrounding this failure to abate citation, however, it can not be disputed that the warrant application suffered from a misleading omission by failing to acknowledge that one of the two noted citations had been withdrawn.[8]

We must add to this already slanted depiction of Brooks' past history the fact that paragraph five falsely alleged that Brooks had filed no progress reports. Brooks had in fact filed several reports and they were contained in the proper file in the OSHA office. The compliance officer discovered the reports after obtaining the warrant but before conducting the inspection, and there is no explanation for his inability to locate them before seeking the warrant. The cor-

---

**7.** The Secretary argues that whatever relevance the settlement agreement has to the ultimate disposition of the citations against Brooks, it should not be relevant to a finding of probable cause if Brooks, in fact, was violating regulations. We disagree. We do not believe it is an appropriate accommodation to Fourth Amendment rights for the Secretary to reach settlements with companies but then nevertheless to conduct inspections based on the very activities that he previously has agreed to treat as in compliance with OSHA's requirements.

Our conclusion as to the importance of the settlement agreement does not, therefore, stem from a review of the merits of the alleged violations, but from our belief that the agreement is

relevant to the threshold question of whether a violation existed. *Cf. West Point-Pepperell*, 689 F.2d at 960–61 (ALJ improperly assessed merits of the violations in determining whether probable cause existed).

**8.** Although the final sentence of paragraph four, stating that Brooks was cited in the past for violations of OSHA standards involving conditions throughout the plant, and not just related to the carding machines, was not challenged, it is insufficient on its own to establish probable cause that such violations presently exist. *See In the Matter of: Establishment Inspection of: Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1339–40 (7th Cir.1979).

rection was never reported to the magistrate and a week after the suppression hearing the Secretary withdrew the allegation regarding progress reports as a ground of probable cause.

Thus, various documents and testimony revealed that every paragraph of the application relevant to establishing probable cause based on the telephoned employee complaint suffered from either an outright falsehood or a misleading omission. In light of these problems, we can not say that the ALJ's decisions on paragraphs two through five of the warrant application were without substantial evidence.

The ALJ viewed paragraph six of the warrant application as the Secretary's attempt to establish a second form of probable cause to inspect Brooks' facility. In *Marshall v. Barlow's, Inc.*, 436 U.S. at 320, 98 S.Ct. at 1824, the Supreme Court held that

> "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation [e.g., an employee complaint that such exists] but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].'" (Citation omitted.)

Thus, the Secretary is entitled to conduct inspections "pursuant to an administrative plan containing specific neutral criteria", *id.* at 323, 98 S.Ct. at 1825. A plan may, for example, provide for programmed inspections of certain businesses based on the level of hazard posed and past accident experience. *Id.* at 321 n. 17, 98 S.Ct. at 1825 n. 17.

Paragraph six stated that the High Hazard Industry Inspection Planning Guide listed Brooks as a high hazard industry in the state of Maine. The ALJ rejected this paragraph as establishing administrative probable cause as a sanction for the Secretary's refusal to disclose the full high hazard industry guide to Brooks. Only one page of the guide was attached to the warrant application. That page contained a listing of companies immediately under the heading "County of York". At the top of the page, however, was the title "Individual Establishments Within Most Hazardous Industries for Maine". Brooks sought access to the full guide to determine whether the listing meant that the company was a high hazardous industry only within York County or whether it, in fact, was so hazardous that it was ranked high on a statewide basis. Brooks apparently felt that a countywide ranking, rather than the statewide ranking alleged in the application, would have weakened the magistrate's view of probable cause. The Secretary argued that the guide was a privileged document not subject to disclosure because it would reveal OSHA's inspection program to companies who could then anticipate inspections, violating the Act's prohibition against advance notice of inspections, 29 U.S.C. § 666(f). The Secretary thus argues here that it was improper to strike paragraph six as a sanction for his refusal to disclose the full guide.

We note first that, on its own, paragraph six was insufficient to establish administrative probable cause. It presented no details from which a magistrate could determine whether an administrative program, in fact, provided probable cause to search Brooks' plant. *See Marshall v. Barlow's, Inc.*, 436 U.S. at 323 n. 20, 98 S.Ct. at 1826 n. 20 ("the program was not described ... or any facts presented that would indicate why an inspection of Barlow's establishment was within the program"). Moreover, the Secretary stated in his reply brief that he did not intend paragraph six of the warrant application to establish a separate basis for probable cause under the "administrative" prong mentioned in *Barlow's*, but merely intended that paragraph as further support for issuing a warrant in response to an employee complaint. As such, however, the paragraph is insufficient to rejuvenate a warrant application suffering from the defects we have described above. Thus, we need not consider whether the ALJ properly struck the guide as a sanc-

tion for the Secretary's refusal to disclose it fully.

Our conclusion, then, is that the ALJ was supported by substantial evidence in finding that the warrant application had "no sufficient 'remaining content,' *Franks v. Delaware,* 438 U.S. p. 172 [98 S.Ct. p. 2684]" to justify issuance of a warrant. Moreover, in these circumstances, we believe it was neither unreasonable nor arbitrary for the ALJ to exclude the evidence obtained in the search made pursuant to the defective warrant.

"Where, as in this case, the Secretary violates an employer's Fourth Amendment rights by slanting a warrant application in order to induce the magistrate to issue a warrant, suppression of the evidence can be expected to have the desired deterrent effect. Whenever OSHA seeks a warrant, it naturally wants the warrant to issue. The temptation is therefore always present to slant the application to make the existence of probable cause appear stronger than it really is. If evidence gathered pursuant to such a warrant is not suppressed, there will be no reason for OSHA to refrain from filing similar applications in the future." OSHA Commision Decision (Chairman Buckley), April 10, 1985.

*See also Smith Steel Casting Co. v. Donovan,* 725 F.2d 1032, 1035–36 (5th Cir.1984) (deferring to policy determination by Review Commission to apply exclusionary rule); *Donovan v. Sarasota Concrete Co.,* 693 F.2d 1061, 1070–71 (11th Cir.1982) (recognizing applicability of exclusionary rule to OSHA proceedings). Accordingly, the ALJ properly vacated the citations and dismissed the complaint against Brooks.

Finally, we wish to emphasize that we do not view lightly any company's efforts to evade remedial action for continuing OSHA violations which put employees at risk, and we would hope that the Secretary would aggressively pursue such violators. At the same time, however, we believe that it is important to retain the protections afforded Fourth Amendment rights by a properly operating warrant procedure. To accom-

plish this, the neutral magistrate whose judgment is so critical must be fully informed of all significant facts.

*The decision of the Commission is affirmed.*